JUDGE KAPLAN

Gregory W. Gilliam (GG-2857)
Rockefeller Center
1270 Avenue of the Americas, 25th Floor
New York, New York 10020
Tel.: (212) 307-5500

John A. McCauley*
Dino S. Sangiamo*
Sally R. Bryan*
750 East Pratt Street, Suite 900
Baltimore, Maryland 21202
Tel.: (410) 244-7400
* Of Counsel

*Attorneys for Defendant,*
*SafeNet, Inc.*

08 CV 6732



RECEIVED
JUL 28 2008
U.S.D.C. S.D. N.Y.
CASHIERS

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
:
SAFENET, INC.                                                :   Case No.: _____
:
                                          Plaintiff,         :   **JURY TRIAL DEMANDED**
:
                    -against-                                :   ECF Case
:
L-3 COMMUNICATIONS, CORP.                                    :
:
                                          Defendants.        :
:
------------------------------------------------------------ X

## COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY JUDGMENT

Preliminary statement

This action arises out of an arrogant display of disregard by industry behemoth

defendant L-3 Communications Corp. ("L-3") for the rights of its contracting partners.

L-3 reaped the benefit of rights to technology owned by a small company called Cylink Corporation ("Cylink"), which has since merged into plaintiff SafeNet, Inc. ("SafeNet"). Through sheer willfulness or recklessness, L-3 flouted its contractual obligation to provide attribution for that technology, and, when called on its transgression, responded in a manner calculated to deprive SafeNet of the contractual benefits to which it was entitled. In so doing, L-3 has not only committed acts of unambiguous breach, and created marketplace mistake and confusion to SafeNet's detriment, it has created a failure of a condition of the grant of the technology license, thereby rendering its use of the technology unauthorized and making itself liable for copyright infringement.

### The Parties and Procedural Matters

1.    SafeNet is a Delaware corporation with its principal place of business in Maryland. It is engaged in the business of providing security utilizing encryption technologies to protect communications, intellectual property and digital identities.

2.    L-3 is a Delaware corporation with its principal place of business in New York. It promotes itself as being a leading provider of Intelligence, Surveillance and Reconnaissance Systems, secure communications systems, aircraft modernization and guidance and navigation systems.

3.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

4.    Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400.

-2-

The License Agreement

5.     On or about March 16, 2001, L-3 entered into a Joint Development and
Licensing Agreement (the "Agreement") with Cylink.  A copy of the Agreement, and
Amendment #1 thereto, is attached hereto as Exhibit A.

6.     On or about December 31, 2005, Cylink merged into SafeNet and SafeNet
became owner of all of Cylink's intellectual property, and the copyrights thereto, all of
which remain the possession of SafeNet.

7.     The Agreement contemplated that Cylink would grant L-3 a license to
Cylink's copyrighted technology known as "NetHawk."  L-3 was to use that technology
for the development and sale of "Products" in the "Field of Use."

8.     The Agreement defines "Product" as "a Type I Virtual Private Network
(VPN) Product that incorporates NetHawk Technology."  Type I, also defined in the
Agreement, refers to a national security classification level.  A "VPN" uses strong
encryption to create a secure "tunnel" through the Internet to transmit information.  The
Agreement defines "Field of Use" as "the market for Type I equipment, including any
entities who have received or may receive approval from the U.S. Government for the use
of Type I equipment."

L-3's prior failure to provide attribution as required by the Agreement

9.     According to L-3's sworn statements, the following L-3 encryption
products incorporate NetHawk technology licensed to it pursuant to the Agreement:  KG-
240, KG-240A, KG-245, KG-245A, KG-245X, and the SME-PED Guardian.  All of
these products, except for the SME-PED Guardian, are part of what L-3 refers to as the

-3-

RedEagle family of products, and, according to L-3, all fit the definition in the Agreement of a "Product."

10.    Pursuant to paragraph 4.1 of the Agreement, although L-3 was to sell Products under its own label and trademarks, L-3 was required to "provide attribution, for Cylink's NetHawk Technology in [L-3's] user documentation created for the Products, all Product data sheets, and marketing materials, and presentations created for the Products, consisting of the acknowledgement 'Incorporating NetHawk VPN Technology Licensed by Cylink Corporation'. . . ."

11.    Up until a date in or about April 2008, and despite its obligation to do so, L-3 failed to provide any attribution related to NetHawk in the product data sheets posted on its website for the KG-245, the KG-245X, and the SME-PED Guardian. On information and belief, L-3 failed during that time period to provide any such attribution for the KG-240A, KG-245, KG-245A, KG-245X, and the SME-PED Guardian in user documentation created for the products, product data sheets, and marketing materials, and presentations created for the products. During some or all of this time period, the product data sheet for the KG-240 did state "Incorporating NetHawk VPN Technology Licensed by SafeNet Corporation," however, some other materials associated with the KG-240 did not include that or any other attribution.

12.    Until February 25, 2008, the foregoing omissions were unknown to SafeNet because SafeNet did not know, and had no reason to suspect, that the KG-240A, KG-245, KG-245A, KG-245X, and the SME-PED Guardian incorporated NetHawk technology. Furthermore, L-3 fraudulently and intentionally concealed from Cylink and SafeNet the information that these products incorporated NetHawk technology.

13.    On February 25, 2008, L-3 served SafeNet with Answers to Interrogatories in another lawsuit in which L-3 disclosed for the first time that the KG-240A, KG-245, KG-245A, KG-245X, and the SME-PED Guardian all incorporated NetHawk technology.

### L-3's ongoing failure to provide attribution as required by the Agreement

14.    On April 4, 2008, and after checking product information on L-3's website, SafeNet notified L-3 that SafeNet was terminating the Agreement upon L-3's failure to cure within 30 days L-3's material breach of the License Agreement due to its failure to provide the attribution required by paragraph 4.1 of the Agreement.

15.    On May 1, 2008, L-3 notified SafeNet that it had taken steps to attempt to cure its breach by providing attribution related to the use of NetHawk technology in the KG-240A, KG-245, KG-245A, KG-245X, and the SME-PED Guardian.

16.    According to L-3, and based on what SafeNet has been able to observe on L-3's website, much of the ostensibly curative attribution provided by L-3 has stated that the product in question incorporates NetHawk technology licensed by Cylink, not by SafeNet.

17.    During a time period before the efforts by L-3 to cure its breach as alleged above, L-3 had provided attribution on the KG-240 product data sheet available on L-3's website for the use of NetHawk with respect to that product. That attribution had accurately stated that the KG-240 "Incorporat[ed] NetHawk Technology Licensed by SafeNet, Inc." In or around April 2008, when L-3 attempted to cure its failure to provide any attribution on the KG-240A, KG-245, KG-245A, KG-245X, and the SME-PED

-5-

Guardian, L-3 changed its attribution for the KG-240 to state that it incorporated technology licensed by Cylink, not by SafeNet.

18.     On May 8, 2008, SafeNet informed L-3 of its position that L-3 still had not cured its breach due to the fact that L-3 was providing attribution to Cylink, instead of SafeNet.

19.     To date, the product data sheets on L-3's website continue to provide attribution to Cylink, not SafeNet, for the KG-240, KG-240A, KG-245, KG-245A, KG-245X, and the SME-PED Guardian, just as they had since L-3's attempt cure actions in April 2008. On information and belief, much, or all, of the user documentation created for the products, product data sheets, and marketing materials, and presentations created for the products provided have also provided attribution to Cylink, not SafeNet, during this time period.

### L-3's animus and the effects of its behavior

20.     L-3's decision to state falsely that the NetHawk technology in the KG-240, KG-240A, KG-245, KG-245A, KG-245X, and the SME-PED Guardian is licensed by Cylink, instead of stating accurately that it is licensed by SafeNet, was made maliciously, or at least willfully and/or in reckless disregard of SafeNet's rights, in order to deny SafeNet the benefit of being associated with the NetHawk technology. L-3's motivation for such maliciousness was, in part, a belief that SafeNet was a competitor, and that it was preferable to give credit to Cylink, than to SafeNet, who is considered by L-3 to be a very smart competitor that it must watch closely. In addition, L-3 was, and remains, in the midst of litigation against SafeNet.

21.     L-3's cavalier or malicious treatment of its attribution obligations has also created a likelihood of confusion, mistake or deception with respect to NetHawk, its ownership and its incorporation into L-3's products, as further alleged below.

## COUNT I
## (Copyright Act)

22.     SafeNet repeats and realleges the allegations of paragraphs 1 through 21 as if fully set forth herein.

23.     Pursuant to paragraph 2.5.1 of the Agreement, the grant of the NetHawk license to L-3 was made "subject to all terms and conditions of [the] Agreement."

24.     SafeNet owns the copyright to NetHawk technology.

25.     As a result of its failure to provide attribution prior to the attempted cure actions of April 2008, L-3's actions with respect to NetHawk during that time were unauthorized because that failure constituted the breach of a condition of the grant of the NetHawk license pursuant to paragraph 2.5.1 of the Agreement.  Accordingly L-3 infringed upon SafeNet's, and previously Cylink's, exclusive rights during that time, in violation of 17 U.S.C. §§ 106, 501.

26.     As a result of its continuing failure to provide proper attribution since the attempted cure actions of April 2008, L-3's actions with respect to NetHawk continue to be unauthorized because that failure constitutes the breach of a condition of the grant of the NetHawk license pursuant to paragraph 2.5.1 of the Agreement, and a material, uncured breach of the Agreement, having the effect of terminating the Agreement. Accordingly L-3 continues to infringe upon SafeNet's exclusive rights, in violation of 17 U.S.C. §§ 106, 501.

BA2DOCS1/347648

27.    As a result of L-3's wrongdoing, SafeNet has sustained, and continues to sustain, actual damages, and L-3 has made, and continues to make, profits, in amounts to be proven at trial.

28.    L-3's misconduct was, and continues to be, willful, reckless and committed in reckless disregard of SafeNet's rights.

COUNT II
(Lanham Act )

29.    SafeNet repeats and realleges the allegations of paragraphs 1 through 28 as if fully set forth herein.

30.    By virtue of its actions as alleged above, L-3 has made statements on or in connection with the sale of goods that are false or, if true, misleading, and that are likely to cause confusion or mistake, or to deceive, to wit:

(a)    At times stating that NetHawk is licensed by Cylink (for example in its current product data sheets for the KG-240, KG-240A, KG-245, KG-245A, KG-245X and the SME-PED Guardian) and at other times stating that NetHawk is licensed by SafeNet (for example, its former product data sheets, and other materials, for the KG-240, and the current website listing at http://www.l-3com.com/cs-east/ia/netcentric/ie_ia_netcentric_haipesolutions.shtml), thereby creating a likelihood of confusion or mistake or of otherwise deceiving as to whether SafeNet is the owner of the rights to the encryption technology known as NetHawk;

(b)    At times stating that the NetHawk technology in the KG-240 is licensed by SafeNet (for example in the former KG-240 product data sheet) and at other times stating that it is licensed by Cylink (for example in the current KG-240 product

-8-

data sheet), thereby creating a likelihood of confusion or mistake or of otherwise

deceiving as to whether SafeNet is the owner of the rights to the encryption technology,

i.e., NetHawk, in the KG-240;

(c)    At times stating that the KG-245X incorporates technology

licensed by CipherOptics, another maker of encryption technology (for example in the

former KG-245X product data sheet), and at other times stating that the KG-245X

incorporates NetHawk (for example in the current KG-245X product data sheet), thereby

creating a likelihood of confusion or mistake or of otherwise deceiving as to whether the

encryption technology incorporated into the KG-245X is that of CipherOptics or

NetHawk;

(d)    At times stating that the KG-245 incorporates technology licensed

by CipherOptics, another maker of encryption technology (for example in the former

KG-245 product data sheet), and at other times stating that the KG-245 incorporates both

technology licensed by CipherOptics and NetHawk (for example in the current KG-245

product data sheet), thereby creating a likelihood of confusion or mistake or of otherwise

deceiving as to whether the encryption technology incorporated into the KG-245 is that

of CipherOptics or SafeNet; and

(e)    Stating in the current KG-245X product data sheet that the

encryption technology in the KG-245X is L-3's, a statement that L-3 did not previously

make in the KG-245X product data sheet, thereby creating a likelihood of confusion or

mistake or of otherwise deceiving as to whether SafeNet is the owner of the rights to the

encryption technology used in the KG-245X.

-9-

31.    As a result of L-3's actions, SafeNet has sustained actual damages in an amount to be proven at trial.

32.    L-3's misconduct was, and continues to be, willful, reckless and committed in reckless disregard of SafeNet's rights.

COUNT III
(Unfair Competition)

33.    SafeNet repeats and realleges the allegations of paragraphs 1 through 32 as if fully set forth herein.

34.    By virtue of its actions as alleged above, L-3 has made statements on or in connection with the sale of goods that are false or, if true, misleading, and that are likely to cause confusion or mistake, or to deceive, to wit:

(a)    At times stating that NetHawk is licensed by Cylink (for example in its current product data sheets for the KG-240, KG-240A, KG-245, KG-245A, KG-245X and the SME-PED Guardian) and at other times stating that NetHawk is licensed by SafeNet (for example, its former product data sheets, and other materials, for the KG-240, and the current website listing at http://www.l-3com.com/cs-east/ia/netcentric/ie_ia_netcentric_haipesolutions.shtml), thereby creating a likelihood of confusion or mistake or of otherwise deceiving as to whether SafeNet is the owner of the rights to the encryption technology known as NetHawk;

(b)    At times stating that the NetHawk technology in the KG-240 is licensed by SafeNet (for example in the former KG-240 product data sheet) and at other times stating that it is licensed by Cylink (for example in the current KG-240 product data sheet), thereby creating a likelihood of confusion or mistake or of otherwise

-10-

deceiving as to whether SafeNet is the owner of the rights to the encryption technology, *i.e.*, NetHawk, in the KG-240;

(c)     At times stating that the KG-245X incorporates technology licensed by CipherOptics, another maker of encryption technology (for example in the former KG-245X product data sheet), and at other times stating that the KG-245X incorporates NetHawk (for example in the current KG-245X product data sheet), thereby creating a likelihood of confusion or mistake or of otherwise deceiving as to whether the encryption technology incorporated into the KG-245X is that of CipherOptics or NetHawk;

(d)     At times stating that the KG-245 incorporates technology licensed by CipherOptics, another maker of encryption technology (for example in the former KG-245 product data sheet), and at other times stating that the KG-245 incorporates both technology licensed by CipherOptics and NetHawk (for example in the current KG-245 product data sheet), thereby creating a likelihood of confusion or mistake or of otherwise deceiving as to whether the encryption technology incorporated into the KG-245 is that of CipherOptics or NetHawk; and

(e)     Stating in the current KG-245X product data sheet that the encryption technology in the KG-245X is L-3's, thereby creating a likelihood of confusion or mistake or of otherwise deceiving as to whether SafeNet is the owner of the rights to the encryption technology in the KG-245X.

35.     As a result of L-3's actions, SafeNet has sustained actual damages in an amount to be proven at trial.

36.    L-3's misconduct was, and continues to be, willful, reckless and committed in reckless disregard of SafeNet's rights.  L-3 committed these various acts and omissions in bad faith.

## COUNT IV
### (Breach of contract for failure of attribution)

37.    SafeNet repeats and realleges the allegations of paragraphs 1 through 36 as if fully set forth herein.

38.    L-3 had a duty under paragraph 4.1 of the Agreement to provide attribution on products that incorporated NetHawk technology.

39.    The Agreement imposed on L-3 an implied duty of good faith and fair dealing.

40.    L-3's failure to provide the required attribution prior to the attempted cure actions of April 2008 constituted a breach of duties set forth in the Agreement.

41.    L-3's continuing failure to provide the required attribution properly since the attempted cure actions of April 2008 constitutes a breach of duties set forth in, or implied into, the Agreement.

42.    As a result of L-3's actions, SafeNet has sustained, and continues to sustain, damages in an amount to be proven at trial.

43.    L-3's misconduct was, and continues to be, willful and reckless.

## COUNT V
### (Breach of contract by use of NetHawk in non Type I product)

44.    SafeNet repeats and realleges the allegations of paragraphs 1 through 43 as if fully set forth herein.

-12-

45.    Pursuant to paragraph 2.5.1 of the Agreement, L-3 was only to use NetHawk in connection with Type I products.

46.    L-3 developed and sells its product known as the SME-PED Guardian, which incorporates NetHawk technology and is both a Type I and non-Type I product.

47.    L-3's use of NetHawk in the SME-PED Guardian constitutes a breach of duties set forth in the Agreement.

48.    As a result of L-3's actions, SafeNet has sustained, and continues to sustain, damages in an amount to be proven at trial.

49.    L-3's misconduct was, and continues to be, willful and reckless.

WHEREFORE, SafeNet demands judgment against L-3 and demands as relief:

    a)    Actual damages in an amount to be proven at trial;

    b)    A preliminary and permanent injunction prohibiting L-3, directly or indirectly, from making, selling or distributing the SME-PED Guardian;

    c)    Costs of this action;

    d)    Attorneys' fees; and

    e)    Any other relief deemed appropriate by this Court.

## COUNT VI
### (Declaration of termination of Agreement)

50.    SafeNet repeats and realleges the allegations of paragraphs 1 through 49 as if fully set forth herein.

51.    L-3's actions, as alleged above, constitute material breaches of the Agreement.

-13-

52.    SafeNet put L-3 on notice of its material breach of the Agreement in compliance with the definition of Material Breach in the Agreement.  In that notice, SafeNet advised L-3 that it was terminating the Agreement upon failure of L-3 to cure. SafeNet has further notified L-3 that its attempted cure was inadequate.  More than 30 days has elapsed since SafeNet provided L-3 with the aforesaid notice.

53.    Pursuant to paragraph 7.2 of the Agreement and SafeNet's above referenced communications to L-3, the Agreement has been terminated.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment in Plaintiff's favor and against Defendant, as follows:

54.    With respect to Count I, Plaintiff requests that this Court grant the following:

a)    Damages in an amount equal either to actual damages plus L-3's profits or statutory damages under 17 U.S.C. § 504;

b)    A preliminary and permanent  injunction prohibiting L-3, directly or indirectly, from making any use, direct or indirect, of NetHawk including, but not limited to, making, selling or distributing any products incorporating NetHawk technology

55.    With respect to Count II, Plaintiff requests that this Court grant the following:

a)    Actual damages in an amount to be proven at trial;

b)    An injunction requiring L-3 to effectuate clarifying communications, the content and dissemination of which to be approved by SafeNet, such approval not to be unreasonably withheld, explaining the prior confusing, mistaken and deceptive statements from L-3, the correct current ownership status of the rights to NetHawk, and a statement identifying the products in which the incorporated encryption technology is SafeNet's NetHawk.

56.    With respect to Count III, Plaintiff requests that this Court grant the following:

a)    Actual damages in an amount to be proven at trial;

b)    A preliminary and permanent injunction requiring L-3 to effectuate clarifying communications, the content and dissemination of which to be approved by SafeNet, such approval not to be unreasonably withheld, explaining the prior confusing, mistaken and deceptive statements from L-3, the correct current ownership status of the rights to NetHawk, and a statement identifying the products in which the incorporated encryption technology is SafeNet's NetHawk;

57.    With respect to Count IV, Plaintiff requests that this Court grant the following:

a)    Actual damages in an amount to be proven at trial;

-15-

b)      A preliminary and permanent injunction requiring L-3 to
provide attribution in L-3's end user documentation, product
data sheets, and marketing materials and presentations for all
products that incorporate NetHawk technology, consisting of
an acknowledgement "Incorporating NetHawk VPN
Technology Licensed by SafeNet, Inc." which shall be no less
favorable in appearance than any acknowledgement expressed
for any other third party for any portion of the products at
issue, and to effectuate clarifying communications, to be
approved by SafeNet, such approval not to be unreasonably
withheld, explaining the corrective actions described herein.

58.     With respect to Count V, Plaintiff requests that this Court grant the
following:

a)      Actual damages in an amount to be proven at trial;

b)      A preliminary and permanent injunction prohibiting L-3,
directly or indirectly, from making, selling or distributing the
SME-PED Guardian;

59.     With respect to Count VI, Plaintiff requests that this Court grant the
following:

a)      A declaration that the Agreement has been terminated.

60.     With respect to All Counts, Plaintiff requests that this Court grant the
following:

a)      Costs of this action;

-16-

b)      Attorneys' fees; and

c)      Any other relief deemed appropriate by this Court.

61.    Plaintiff requests a jury trial with respect to the above-captioned matter.


Dated:  July  28, 2008                          Respectfully Submitted,

                                                VENABLE LLP

                                                By: _____
                                                Gregory W. Gilliam (GG2857)
                                                Rockefeller Center
                                                1270 Avenue of the Americas, 25th Floor
                                                New York, New York 10020
                                                Telephone: 212-307-5500
                                                Facsimile: 212-307-5598

                                                Of Counsel:
                                                John A. McCauley
                                                Dino S. Sangiamo
                                                Sally R. Bryan
                                                750 East Pratt Street
                                                Suite 900
                                                Baltimore, Maryland  21202
                                                (410) 244-7400

                                                ***Attorneys for Plaintiff SafeNet, Inc.***

BA2DOCS1/347648