UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – X
    :
SAFENET, INC.,    :
    :   08-CV-6732 (LAK)
          Plaintiff,    :
    :   ECF Case
        -against-    :
    :
L-3 COMMUNICATIONS CORP.,    :
    :
          Defendant.    :
    :
– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – X

## DEFENDANT L-3 COMMUNICATIONS CORP'S
## <u>PROPOSED JURY INSTRUCTIONS</u>

MORGAN, LEWIS & BOCKIUS LLP
Timothy D. Katsiff*
1701 Market Street
Philadelphia, PA 19103
Tel.:  (215) 963-4857
*Of Counsel

and

BLANK ROME LLP
Kenneth L. Bressler (KB-3389)
Jeremy L. Reiss (JR-2731)
Blank Rome LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Tel.:  (212) 885-5000

Attorneys for Defendant,
L-3 Communications Corp.

Table of Contents

Page

EVIDENCE IN THE CASE* ...................................................................................................2

DEPOSITION AS SUBSTANTIVE EVIDENCE*.................................................................4

DIRECT AND CIRCUMSTANTIAL EVIDENCE* ...............................................................5

"DIRECT" AND "CIRCUMSTANTIAL" EVIDENCE—DEFINED* ........................................6

"INFERENCES" DEFINED*...................................................................................................7

CREDIBILITY OF WITNESSES* .........................................................................................8

DISCREPANCIES IN TESTIMONY* ....................................................................................9

IMPEACHMENT—INCONSISTENT STATEMENT OR CONDUCT*...................................11

FAILURE TO CALL AVAILABLE WITNESS*....................................................................12

FAILURE TO PRODUCE AVAILABLE EVIDENCE*...........................................................13

RULING ON OBJECTIONS*.................................................................................................14

EXPERT WITNESS* .............................................................................................................15

CHARTS AND SUMMARIES* .............................................................................................16

PREPONDERANCE OF THE EVIDENCE* ...........................................................................17

EXCLUSIVE LICENSE OF COPYRIGHT*...........................................................................18

MATERIAL BREACH*.........................................................................................................19

COPYRIGHT INFRINGMENT—ELEMENTS* .....................................................................20

ORIGINALITY—GENERAL*................................................................................................21

COPYING*............................................................................................................................22

COPYRIGHT DAMAGES - GENERAL*...............................................................................24

COPYRIGHT DAMAGES—ACTUAL DAMAGES*..............................................................26

i

COPYRIGHT DAMAGES—PROFITS*.....................................................................27

LANHAM ACT —FALSE DESIGNATION OF ORIGIN*......................................28

LANHAM ACT —ACTUAL DAMAGES*...............................................................30

UNFAIR COMPETITION*..........................................................................................31

UNFAIR COMPETITION — DAMAGES*.................................................................32

BREACH OF CONTRACT - ATTRIBUTION*.........................................................33

BREACH OF CONTRACT—DAMAGES*.................................................................34

MITIGATION OF DAMAGES*...................................................................................35

CLEAR AND CONVINCING EVIDENCE—DEFINED*..........................................36

FRAUD*........................................................................................................................37

DAMAGES - PUNITIVE*............................................................................................41

MISREPRESENTATION—SPECIAL RELATIONSHIP*..........................................43

MISREPRESENTAITON—ELEMENTS*...................................................................44

**EVIDENCE IN THE CASE***

The evidence in the case will consist of the following:

1.      The sworn testimony of the witnesses, no matter who called the witness.

2.      All exhibits received in evidence, regardless of who may have produced the exhibits.

3.      All facts that may have been judicially noticed and that you must take as true for purposes of this case.

Depositions may also be received in evidence.  Depositions contain sworn testimony, with the lawyers for each party being entitled to ask questions.  In some cases, a deposition may be played for you on videotape.  Deposition testimony may be accepted by you, subject to the same instructions that apply to witnesses testifying in open court.

Statements and arguments of the lawyers are not evidence in the case, unless made as an admission or stipulation of fact.  A "stipulation" is an agreement between both sides that certain facts are true.  When the lawyers on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard that fact as proved.

I may take judicial notice of certain facts or events.  When I declare that I will take judicial notice of some fact or event, you must accept that fact as true.

If I sustain an objection to any evidence or if I order evidence stricken, that evidence must be entirely ignored.

Some evidence is admitted for a limited purpose only.  When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other purpose.

You are to consider only the evidence in the case.  But in your consideration of the evidence you are not limited to the statements of the witness.  In other words, you are not limited solely to what you see and hear as the witnesses testified.  You may draw from the facts that you find have been proved, such reasonable inferences or conclusions as you feel are justified in light of your experience.

At the end of the trial you will have to make your decision based on what you recall of the evidence.  You will not have a written transcript to consult, and it is difficult and time consuming for the reporter to read back lengthy testimony.  I urge you to pay close attention to the testimony as it is given.

\*        **Federal Jury Practice and Instructions (Fifth) § 101.40.**

**DEPOSITION AS SUBSTANTIVE EVIDENCE\***

Testimony will now be presented through a deposition.  A deposition contains the sworn, recorded answers to questions asked a witness in advance of the trial.  A witness' testimony may sometimes be presented in the form of a deposition.  Some time before this trial, attorneys representing the parties in this case questioned this witness under oath.  A court reporter was present and recorded the testimony.

You must give this deposition testimony the same consideration as if the witness had been present and had testified from the witness stand in court.

**\*        Federal Jury Practice and Instructions (Fifth) § 102.23.**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE\***

"Direct evidence" is direct proof of a fact, such as testimony by a witness about what the witness said or heard or did. "Circumstantial evidence" is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

**\*        Federal Jury Practice and Instructions (Fifth) § 101.42.**

**"DIRECT" AND "CIRCUMSTANTIAL" EVIDENCE—DEFINED\***

Generally speaking, there are two types of evidence that are generally presented during a trial—direct evidence and circumstantial evidence.   "Direct evidence" is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness. "Indirect or circumstantial" evidence is proof of a chain of facts and circumstances indicating the existence or nonexistence of a fact.

As a general rule, the law makes no distinction between the weight or value to be given to either direct or circumstantial evidence.   Nor is a greater degree of certainty required of circumstantial evidence.   You are simply required to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

**\*        Federal Jury Practice and Instructions (Fifth) § 104.05.**

**"INFERENCES" DEFINED***

You are to consider only the evidence in the case. However, you are not limited to the statements of the witnesses. In other words, you are not limited to what you see and hear as the witnesses testify. You may draw from the facts that you find have been proved such reasonable inferences as seem justified in light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.

---

\*      **Federal Jury Practice and Instructions (Fifth) § 104.20.**

**CREDIBILITY OF WITNESSES***

In deciding the facts, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, part of it, or none of it.  In considering the testimony of any witness, you may take into account many factors, including the witness' opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness' memory; the witness' appearance and manner while testifying; the witness' interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness' testimony; and the reasonableness of the witness' testimony in light of all the evidence.  The weight of the evidence does not necessarily depend upon the number of witnesses who testify.

**\*        Federal Jury Practice and Instructions (Fifth) § 101.43.**

**DISCREPANCIES IN TESTIMONY***

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness' ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters. Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact.  You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

*        **Federal Jury Practice and Instructions (Fifth) § 105.01.**

**IMPEACHMENT—INCONSISTENT STATEMENT OR CONDUCT***

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something that is inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness' other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done, if voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

\* **Federal Jury Practice and Instructions (Fifth) § 105.04.**

**FAILURE TO CALL AVAILABLE WITNESS***

      If a party fails to call a person as a witness who has knowledge about the facts in issue, and who is reasonably available to the party, and who is not equally available to the other party, then you may infer that the testimony of that person is unfavorable to the party who could have called the witness and did not.

**\*       Federal Jury Practice and Instructions (Fifth) § 104.25.**

**FAILURE TO PRODUCE AVAILABLE EVIDENCE***

If a party fails to produce evidence that is under that party's control and reasonably available to that party and not reasonably available to the adverse party, then you may infer that the evidence is unfavorable to the party who could have produced it and did not.

---

\*        **Federal Jury Practice and Instructions (Fifth) § 104.26.**

**RULING ON OBJECTIONS***

When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received into evidence.  If I sustain the objection, the question cannot be answered and the exhibit cannot be received into evidence.

If I sustain an objection to a question or the admission of an exhibit, you must ignore the question and must not guess what the answer to the question might have been. In addition, you must not consider evidence that I have ordered stricken from the record.

**\*        Federal Jury Practice and Instructions (Fifth) § 101.49.**

**EXPERT WITNESS\***

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions.  An exception to this rule exists for "expert witnesses."  An expert witness is a person who, by education and experience has become expert in some art, science, profession, or calling.  Expert witnesses may state their opinions as to matters in which they profess to be expert, and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.

**\*      Federal Jury Practice and Instructions (Fifth) § 104.40.**

**CHARTS AND SUMMARIES\***

Certain charts and summaries have been shown to you in order to help explain facts disclosed by records and other documents that are in evidence in the case. These charts or summaries are not themselves evidence or proof of any facts. If the charts or summaries do not correctly reflect facts or figures shown by the evidence in the case, you should disregard them.

In other words, the charts or summaries are used only as a matter of convenience. To the extent that you find they are not truthful summaries of facts or figures shown by the evidence in the case, you are to disregard them entirely.

**\*      Federal Jury Practice and Instructions (Fifth) § 104.50.**

**PREPONDERANCE OF THE EVIDENCE\***

Plaintiff SafeNet, Inc. ("SafeNet") has the burden in a civil action such as this to prove every essential element of its claims by a preponderance of the evidence.  If SafeNet should fail to establish any essential element of a claim by a preponderance of the evidence, you should find for Defendant L-3 Communications Corp. ("L-3") as to that claim.

"Establish by a preponderance of the evidence" means to prove that something is more likely so than not so. In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true. This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard that applies in criminal cases. It does not apply in civil cases such as this. You should, therefore, put it out of your minds.

\*      **Federal Jury Practice and Instructions (Fifth) § 104.01.**

17

**EXCLUSIVE LICENSE OF COPYRIGHT***

The owner of a copyright may transfer, sell, or convey to another person any of the exclusive rights included in the copyright.

The person to whom this right is transferred is called an exclusive licensee.   Under the terms of the License Agreement between Cylink and L-3, L-3 became the exclusive licensee of NetHawk Technology.

The licensor of technology has no claim for copyright infringement against an exclusive licensee absent proper termination of the exclusive licensee's licensing rights.   Therefore, in order for SafeNet to state a valid claim against L-3 for copyright infringement, SafeNet must prove by a preponderance of the evidence that the License Agreement has been terminated.   If SafeNet cannot make such a showing by a preponderance of the evidence, you must find against SafeNet on its copyright infringement claim.

---

**\*      Federal Jury Practice and Instructions (Fifth) § 160.50;** *Atlantis Info. Tech. GmbH v. CA, Inc.,* **485 F.Supp.2d 223 (E.D.N.Y. 2007);** *United States Naval Inst. v. Charter Communications, Inc.,* **936 F.2d 692 (2d Cir. 1991).**

**MATERIAL BREACH\***

[In the event that the Court finds that under the License Agreement L-3 was required to give attribution to SafeNet]

I have found that L-3 breached the License Agreement by failing to give attribution to SafeNet.  In order to find that L-3's exclusive license to NetHawk Technology was terminated, you must find that SafeNet met its burden of proving by a preponderance of the evidence that this breach was a Material Breach of the License Agreement.

In order to meet its burden, SafeNet must prove that L-3's failure to properly provide attribution has had a "material adverse effect on the operations, property or financial condition" of SafeNet.  In order to prevail on a claim that an alleged breach has had a "material adverse effect", SafeNet must make a strong showing that the alleged breach had a sufficiently substantial effect on its operations, property or financial condition of a company as a whole.  If SafeNet cannot prove all of these elements by a preponderance of the evidence, then there was no Material Breach and the License Agreement was not terminated.  If the License Agreement was not terminated, you must find against SafeNet on its copyright infringement claim.

---

\*       License Agreement, p. 2; *In re IBP, Inc. v. Shareholders Litig.*, **189 A.2d 14 (Del. Ch. 2001) (applying New York law);** *Freedman v. Value Health, Inc.*, **34 Fed. Appx. 408 (2d Cir. 2002)**

**COPYRIGHT INFRINGEMENT—ELEMENTS***

In addition to proving that L-3 committed a Material Breach of the License Agreement, in order to prevail on its copyright infringement claim, SafeNet must also prove the following two things:

First:  That SafeNet is the owner of a work protected by the Copyright Act.

Second:  That L-3 infringed one or more of the rights granted by the Copyright Act.

Each of these aspects has several elements that I will explain to you.

---

**\***    **Federal Jury Practice and Instructions (Fifth) § 160.21.**

## ORIGINALITY—GENERAL*

The first thing that SafeNet must prove is that it is the owner of a work protected by the Copyright Act.  In order to prove this, SafeNet must show the following elements:

First: That NetHawk Technology is an original work;

Second: Either that SafeNet is the author of NetHawk Technology, or that SafeNet's relationship with the author permits SafeNet to claim ownership of NetHawk Technology; and

Third: That SafeNet has complied with the formalities of the federal copyright law.

SafeNet's certificate of registration of its copyright is what is called prima facie evidence of the element of ownership.  In other words, if there is no evidence against SafeNet as to that element, the registration certificate alone is sufficient to establish that element.

The burden of proof lies with SafeNet.  You must find that SafeNet has proved these three elements by a preponderance of the evidence before you may find for SafeNet in this action.

---

*       **Federal Jury Practice and Instructions (Fifth) § 160.22; 17 U.S.C. § 201(a);** *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,* **499 U.S. 340 (1991);** *Aldon Accessories Ltd. v. Spiegel, Inc.,* **738 F.2d 548 (2d Cir. 1984), cert. denied, 469 U.S. 982, 105 S. Ct. 387, 83 L. Ed. 2d 321 (1984), overruled on other grounds,** *Community for Creative Non-violence v. Reid,* **490 U.S. 730, 736 n.2 (1989).**

**COPYING***

In order to establish infringement, SafeNet must also prove that L-3's work was copied or taken from SafeNet's work.  No matter how similar the two works are, SafeNet may not recover against L-3 unless that similarity is the result of the copying or taking of SafeNet's work, directly or indirectly, intentionally or unintentionally.

In addition, there is no liability unless it is the original aspects of SafeNet's work that are copied or taken.  If L-3 copied or took only those portions of SafeNet's work which were not original with SafeNet, that is, portions which SafeNet had in turn copied or taken from somebody else, then L-3 is not liable for copyright infringement.

You are entitled to consider both the quantitative and qualitative aspects of the copied work to determine whether improper copying has occurred.  The qualitative aspect requires you to determine whether the copied portion of the works are those unique features that distinguish one product from those of its competitors.  Therefore, if you determine that L-3 copied portions of NetHawk Technology, but that those portions that were copied were not unique features such that they distinguished L-3's products from competitive products, then you are entitled to find that improper copying did not occur.  If you so find, then you should find in favor of L-3 and against SafeNet on SafeNet's copyright infringement claim.

The quantitative aspect of this analysis requires you to determine whether the amount of copying that took place was of a sufficient amount as to not be de minimis.  "De minimis" copying means that the copying has occurred to such a trivial extent as to fall below the quantitative threshold of substantial similarity.  Therefore, if you find that L-3 copied such a small amount of NetHawk Technology code such that it was a trivial amount of the total amount of code in L-3's products, then you are entitled to find that improper copying did not occur.  If

you so find, then you should find in favor of L-3 and against SafeNet on SafeNet's copyright infringement claim.

---

\*        **Federal Jury Practice and Instructions (Fifth) § 160.26;** *O P Solutions, Inc. v. Intellectual Prop. Network Ltd.***, 1999 U.S. Dist. LEXIS 16639 (S.D.N.Y. Oct. 19, 1999);** *Ringgold v. Black Entm't Television, Inc.***, 126 F.3d 70 (2d Cir. 1997)**

**COPYRIGHT DAMAGES - GENERAL***

My charge to you on the law of damages must not be taken as a suggestion that you should find for SafeNet.  It is for you to decide on the evidence presented and the rules of law I have given you whether SafeNet is entitled to recover from L-3.  If you decide it is not entitled to recover, you need not consider damages.  Only if you decide that SafeNet is entitled to recover will you consider damages.

If you find that SafeNet had a valid copyright and you find that that copyright was infringed by L-3, then you should find for SafeNet.  You must then decide on the amount of damages SafeNet is entitled to recover.

The law allows a successful plaintiff to recover the actual damages suffered by it as a result of the infringement, including un-recovered costs and lost profits, and also any profits of the defendant attributable to the infringement that you have not already taken into account or properly covered in figuring the plaintiff's lost profits.

Here, L-3's profits, if any, consist of the amount of money that L-3 has made due to the infringement after deducting L-3's expenses in developing, producing and marketing the infringing work.

SafeNet is not necessarily entitled to all of L-3's profits, but only to the part of L-3's profits which is due to the infringement.  If L-3's work was profitable for reasons that had nothing to do with L-3's infringement of SafeNet's work, then SafeNet is not entitled to recover L-3's profits, because they did not result from the infringement.

If you reach that point, you must decide to what extent L-3's sales and profits were attributable to copyright infringement, and whether SafeNet is entitled to all of L-3's profits, or none of SafeNet's profits, or something in between.

---

\*        **Federal Jury Practice and Instructions (Fifth) § 160.90;** *Aldon Accessories Ltd. v. Spiegel, Inc.*, **738 F.2d 548 (2d Cir. 1984), cert. denied, 469 U.S. 982, 105 S. Ct. 387, 83 L. Ed. 2d 321 (1984), overruled on other grounds,** *Community for Creative Non-violence v. Reid*, **490 U.S. 730, 736 n.2 (1989).**

**COPYRIGHT DAMAGES—ACTUAL DAMAGES\***

My charge to you on the law of damages must not be taken as a suggestion that you should find for SafeNet.  It is for you to decide on the evidence presented and the rules of law I have given you whether SafeNet is entitled to recover from L-3.  If you decide it is not entitled to recover, you need not consider damages.  Only if you decide that SafeNet is entitled to recover will you consider damages.

If you find that SafeNet is the copyright owner and that L-3 infringed SafeNet's copyrighted work, then SafeNet is entitled to recover the actual damages SafeNet suffered as a result of the infringement.

The term "actual damages" means the amount of money adequate to compensate the copyright owner for the reduction of the market value of the copyrighted work caused by the infringement.

The reduction in the market value of the copyrighted work is the amount a willing buyer would have been reasonably required to pay to a willing seller at the time of the infringement for the use made by L-3 of SafeNet's work.

**\*      Federal Jury Practice and Instructions (Fifth) § 160.91.**

**COPYRIGHT DAMAGES—PROFITS\***

If you find SafeNet is the copyright owner and that L-3 infringed SafeNet's copyrighted work, as the copyright owner SafeNet is entitled to any profits attributable to the infringement in addition to actual damages.

Profits are determined by deducting all expenses from gross revenue.  Gross revenue is all of L-3's receipts from the use or sale of a work containing or using the copyrighted work. Expenses are all operating, overhead, and production costs incurred in producing the gross revenue.

Unless you find that a portion of the profits from the use or sale of a product or work containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, the total profit is attributable to the infringement.

SafeNet has the burden of providing gross revenue by a preponderance of the evidence. L-3 has the burden of proving its expenses associated with operating, overhead, and production costs incurred in producing any of the infringing products, as well as the portion of any profits generated that are attributable to factors other than the copyrighted work by a preponderance of the evidence.

You may not include in an award of profits any amount that you took into account in determining actual damages.

**\*        Federal Jury Practice and Instructions (Fifth) § 160.92.**

**LANHAM ACT —FALSE DESIGNATION OF ORIGIN***

To prevail on its claim under the Lanham Act, SafeNet has the burden of proving each of the following elements by a preponderance of the evidence:

(1) that L-3 used in commerce a false designation of origin, false description or false representation in connection with NetHawk Technology;

(2) the use of the false designation of origin, false description or false representation is likely to cause confusion or deceive as to the origin of the technology in L-3's products or the sponsorship of L-3's products by another person; and

(3) SafeNet was damaged by L-3's actions.

Here, SafeNet claims that L-3 has made statements in connection with the sale of goods that are false or, if true, misleading and that are likely to cause confusion or mistake or to deceive the public as to the identity of the true owner of NetHawk Technology.  Specifically, SafeNet claims that on certain occasions when marketing its products, L-3 has provided attribution to Cylink as the licensor of NetHawk Technology and on others to SafeNet, and vice versa, and that doing so has caused a likelihood of confusion or mistake or deceit as to whether SafeNet is the owner of NetHawk Technology.  SafeNet also claims that L-3 has provided attribution relating to certain of L-3's RedEagle products to an entity known as CipherOptics and on others to SafeNet and CipherOptics and that doing so creates a likelihood or confusion or mistake or deceit as to whether the encryption technology incorporated into those products is that of CipherOptics or SafeNet.

L-3 claims that it cannot have caused any confusion by providing attribution to Cylink because that is what it is expressly obligated to do under the License Agreement.  In addition, L-3 claims that there can be no confusion between Cylink and SafeNet because SafeNet purchased

Cylink and then held it as a wholly-owned subsidiary before eventually merging Cylink into SafeNet in December 2005.  L-3 further claims that SafeNet has not suffered any damages.

L-3 also claims that it gave attribution to Cipher Optics because it used that technology and was contractually required to do so.  L-3 claims that there can be no confusion because its statements are true.

In addition, SafeNet must establish that there was actual customer confusion or deception resulting the violation of the Lanham Act.  L-3 contends that SafeNet cannot prove any actual confusion or deception.  If SafeNet cannot establish actual confusion or deception, then you must find against SafeNet on this claim.

If you find that each of the elements on which SafeNet has the burden of proof has been proved, your verdict should be for SafeNet.   If, on the other hand, SafeNet has failed to prove any of these elements, your verdict should be for L-3.

\*       **Federal Jury Practice and Instructions (Fifth) § 159.26; 15 U.S.C. § 1125(a).**

**LANHAM ACT —ACTUAL DAMAGES***

My charge to you on the law of damages must not be taken as a suggestion that you should find for SafeNet.  It is for you to decide on the evidence presented and the rules of law I have given you whether SafeNet is entitled to recover from L-3.  If you decide it is not entitled to recover, you need not consider damages.  Only if you decide that SafeNet is entitled to recover will you consider damages.

If you find for SafeNet on its Lanham Act claim, you must determine SafeNet's damages. SafeNet has the burden of proving damages by a preponderance of the evidence.

You should consider damages to mean the amount of money that will reasonably and fairly compensate SafeNet for any injury and/or property damage you find was proximately caused by the confusion or mistake or deceit caused by L-3's statements as to whether SafeNet is the owner of NetHawk Technology and whether L-3's products contained NetHawk Technology.

When considering damages, you must not over-compensate.  Any award of such future costs should not exceed the actual damage to the value of SafeNet's mark at the time of the infringement by L-3.

L-3 contends that SafeNet cannot prove any injury to its goodwill or reputation or any loss of sales or lost profits caused by L-3's alleged failure to give proper attribution to SafeNet.

---

**\*      Federal Jury Practice and Instructions (Fifth) § 159.91;** *PPX Enterprises, Inc. v. Autofidelity Enterprises, Inc.***, 818 F.2d 266 (2d Cir. 1987).**

**UNFAIR COMPETITION***

SafeNet has also asserted a claim against L-3 for unfair competition, which arises out of the same operative facts as SafeNet's Lanham Act claim.  The standard for unfair competition under New York law is virtually identical to the standard under the Lanham Act.  Therefore, if you determine that SafeNet has failed to satisfy its burden of proof on its Lanham Act claim, then you must find against SafeNet and in favor of L-3 on SafeNet's unfair competition claim. Conversely, if you determine that SafeNet satisfied its burden of proof on its Lanham Act claim, then you must find in favor of SafeNet and against L-3 on SafeNet's unfair competition claim.

---

*       *Bangkok Crafts Corp. v. Capitolo Si San Pietro in Vaticano*, **331 F.Supp.2d 247 (S.D.N.Y. 2004)**

**UNFAIR COMPETITION — DAMAGES\***

My charge to you on the law of damages must not be taken as a suggestion that you should find for SafeNet.  It is for you to decide on the evidence presented and the rules of law I have given you whether SafeNet is entitled to recover from L-3.  If you decide it is not entitled to recover, you need not consider damages.  Only if you decide that SafeNet is entitled to recover will you consider damages.

If you find for SafeNet on its unfair competition claim, you must determine SafeNet's damages.  SafeNet has the burden of proving damages by a preponderance of the evidence.

You should consider damages to mean the amount of money that will reasonably and fairly compensate SafeNet for any injury and/or property damage you find was proximately caused by the confusion or mistake or deceit caused by L-3's statements as to whether SafeNet is the owner of NetHawk Technology and whether L-3's products contained NetHawk Technology.

When considering damages, you must not over-compensate.  Any award of such future costs should not exceed the actual damage to the value of SafeNet's mark at the time of the infringement by L-3.

L-3 contends that SafeNet cannot prove any injury to its goodwill or reputation or any loss of sales or lost profits caused by L-3's alleged failure to give proper attribution to SafeNet.

**BREACH OF CONTRACT - ATTRIBUTION***

[In the event that the Court finds that under the License Agreement L-3 was required to give attribution to SafeNet]

SafeNet seeks to recover damages for breach of contract based on L-3's alleged failure to comply with Section 4.1 of the License Agreement, which states:

> Product.  L-3 CS-E shall sell Products under its own label and trademarks.  L-3 CS-E shall provide attribution, for Cylink's NetHawk Technology in L-3 CS-E's user documentation for the Products, all Product data sheets, and marketing materials and presentations created for the Products, consisting of the acknowledgment "Incorporating NetHawk VPN Technology Licensed by Cylink Corporation" which shall be no less favorable in appearance than any acknowledgment expressed for any other third party for any portion of the Products.

SafeNet claims that L-3 failed to provide proper attribution up until April 2008 for several of L-3's products that incorporate NetHawk Technology and that, as a result, L-3 breached Section 4.1 the License Agreement.  Specifically, SafeNet claims that L-3 failed to provide any attribution related to NetHawk Technology in data sheets posted on L-3's website for products known as the KG-245, KG-245X, and the SME-PED Guardian.  In addition, SafeNet claims that L-3 failed during that time period to provide any attribution for the KG-245, KG-245X, KG-245A, KG-240A, and the SME-PED Guardian in user documentation created for the products, data sheets, and marketing materials and presentations.

SafeNet also claims that after April 2008, L-3 has continued to breach Section 4.1 of the License Agreement because since that time L-3 has provided attribution to Cylink. SafeNet claims that the attribution language should make reference to SafeNet instead of Cylink.

*     NY PJI 4:1 Contracts—Elements; ROBERT E. KEHOE, JR., JURY INSTRUCTIONS FOR CONTRACT CASES § 5.06.

**BREACH OF CONTRACT—DAMAGES\***

My charge to you on the law of damages must not be taken as a suggestion that you should find for SafeNet.  It is for you to decide on the evidence presented and the rules of law I have given you whether SafeNet is entitled to recover from L-3.  If you decide it is not entitled to recover, you need not consider damages.  Only if you decide that SafeNet is entitled to recover will you consider damages.

Where one party to a contract breaches that contract, the other party may recover for those injuries that have been proved to you with reasonable certainty.  Generally, the measure of damages is the sum that will compensate the plaintiff for the loss sustained. If you find that the defendant breached the contract, you must then decide, based on the evidence the plaintiff has presented, what amount of money will compensate the plaintiff for those injuries that were a direct and foreseeable result of the breach, and that the parties could have reasonably foreseen with certainty at the time they made the contract.

---

**\*       NY PJI 4:20 Contracts—Damages—Generally;** *Bi-Economy Market, Inc. v. Harleysville Ins. Co. of New York*, **10 N.Y.3d 187, 856 N.Y.S.2d 505;** *Freund v. Washington Square Press, Inc.*, **34 N.Y.2d 379, 357 N.Y.S.2d 857.**

**MITIGATION OF DAMAGES***

The law requires a plaintiff that has suffered damages to make diligent efforts to mitigate those damages. The burden of proving the plaintiff's failure to mitigate damages is the burden of the defendant.  Therefore, L-3 has the burden of establishing not only that SafeNet failed to make diligent efforts to mitigate its damages, but also the extent to which such efforts would have diminished its damages.  For example, if you find that SafeNet could have itself advertised or otherwise marketed the fact that L-3's products included NetHawk Technology, but failed to do so, you can determine what effect SafeNet's own failure to market had on its alleged damages.

If L-3 satisfies its burden, then SafeNet is not entitled to recover damages for harm that it could have avoided with reasonable efforts or expenditures.  You should consider the reasonableness of SafeNet's efforts in light of the circumstances facing it at the time, including SafeNet's ability to make the efforts or expenditures without undue risk or hardship.

***      NY PJI 4:20;** *LaSalle Bank National Ass'n v. Nomura Asset Capital Corp.***, 47 A.D.3d 103, 846 N.Y.S.2d 95.**

**CLEAR AND CONVINCING EVIDENCE—DEFINED\***

The burden is on SafeNet to prove fraud by clear and convincing evidence.  This means evidence that satisfies you that there is a high degree of probability that there was fraud, as I will define it for you.

To decide for SafeNet it is not enough to find that the preponderance of the evidence is in its favor.  A party who must prove its case by a preponderance of the evidence only need satisfy you that the evidence supporting its case more nearly represents what actually happened than the evidence which is opposed to it.  But a party who must establish its case by clear and convincing evidence must satisfy you that the evidence makes it highly probable that what it claims is what actually happened.

If, upon all the evidence, you are satisfied that there is a high probability that there was fraud, as I will define it for you, you must decide for SafeNet.  If you are not satisfied that there is such a high probability, you must decide for L-3.

**\*       NY PJI 1:64 General Instruction—Burden of Proof— Clear & Convincing Evidence.**

**FRAUD***

SafeNet seeks to recover damages that it claims were caused by a fraud committed by L-3.  In order to recover for fraud, SafeNet must prove by clear and convincing evidence that: 1) L-3 made a representation of fact; 2) that the representation was false and material; 3) that L-3 knew it was false or made the representation recklessly without regard to whether it was true or false; 4) that L-3 made the representation to induce Cylink and/or SafeNet to rely upon it; 5) that SafeNet did justifiably rely upon it, and 6) that SafeNet sustained damages.

SafeNet claims that L-3 made intentionally false statements regarding the absence of NetHawk Technology in L-3's "Gigabit Products", which are the KG-245 and KG-245X, prior to the time that SafeNet and L-3 entered into the Amendment to the License Agreement.  SafeNet claims that these false statements reduced the amount L-3 paid to SafeNet pursuant to the Amendment and that SafeNet would have demanded that L-3 pay more money to SafeNet to buy out the future royalty stream required in the License Agreement.

SafeNet has the burden of proving, by clear and convincing evidence:

First, that L-3 made a representation(s) of fact that its Gigabit Products did not and would not have NetHawk Technology in them;

Second, that the representation(s) was false;

Third, that L-3 knew the representation(s) was false or made the representation recklessly without regard to whether it was true or false;

Fourth, that L-3 made the representation(s) to SafeNet to induce SafeNet to accept a lower royalty buy-out offer than it would otherwise be entitled, and;

Fifth, that SafeNet justifiably relied upon L-3's representation(s) that there was no NetHawk Technology in the Gigabit Products in deciding to accept L-3's proposed royalty buy-out figure.

The first question you will be asked to decide is whether L-3 made the representation(s). If you find that L-3 did not make the representation(s), you need proceed no further on the claim of fraud.

If you find that L-3 did make the representation(s), you must next decide whether the representation(s) was true or false.  If the representation(s) was true, you need proceed no further on the claim of fraud.  If the representation(s) was false, you must next decide whether L-3 knew it was false or made it recklessly without regard to whether it was true or false.  L-3 claims that to the extent any representations were made about the existence or non-existence of NetHawk Technology in the Gigabit Products, those representations were not fraudulent because L-3's management, which communicated with Cylink and SafeNet, were not aware that there was any NetHawk Technology in the Gigabit Products.

If you find that L-3 did not know that it was false and that L-3 did not make it recklessly, you need proceed no further on the claim of fraud.  If you find that L-3 did know the representation(s) was false or acted recklessly, you must next decide whether the representation(s) was made to induce SafeNet to accept a lower royalty buy-out offer than it would otherwise be entitled and was material.   L-3 claims that any such representations were not material to SafeNet's decision to accept the royalty-stream buy-out.

If you find that L-3 did not made the statement to induce SafeNet to accept a lower royalty buy-out offer than it would otherwise be entitled, you need proceed no further on the claim of fraud.  If you find that L-3 did make the representation(s) to induce SafeNet to accept a lower royalty buy-out offer than it would otherwise be entitled, you must next decide whether SafeNet was justified in relying on the representation(s).

Whether the person to whom a representation(s) is made is justified in relying upon it generally depends upon whether the fact represented is one that a reasonable person would believe and consider important in deciding whether to accept a royalty buy-out offer than it would otherwise be entitled. Whether a person is justified in relying on a representation also depends on whether a reasonable person would accept a royalty buy-out offer without independent investigation.

Here, L-3 claims SafeNet did not justifiably rely on any alleged representations because none of Cylink's representatives ever advised SafeNet of the alleged representations by L-3 to Cylink or showed SafeNet any documents in which alleged representations were made.  L-3 also claims that SafeNet did not justifiably rely on any alleged representations because Cylink's representatives believed that there would be some amount of NetHawk Technology in the Gigabit Products.  In addition, SafeNet knew that L-3 intended to use certain other technology in the Gigabit Products known as Privacy Manager and believed that SafeNet would have been entitled to a full 17% royalty under the License Agreement for the sale of such products. Therefore, in negotiating the Amendment, SafeNet believed that it was entitled to royalties on the Gigabit Products regarding of whether those products contained NetHawk Technology.

If you find that SafeNet was not justified in relying on the representation, you need proceed no further on the claim of fraud.  If you find that SafeNet was justified in relying on the representation, you must next decide whether SafeNet was damaged as a result of the fraud.

SafeNet claims that it was damaged as a result of the alleged fraud in that it received less money in connection with the Amendment than it would have otherwise received had it known that the Gigabit Products had NetHawk Technology in them.  L-3 claims that SafeNet did not suffer any damages because SafeNet's concern in negotiating the Amendment was not in

obtaining the most possible revenue in the Amendment, but rather simply that it obtain sufficient revenue to guarantee that it would meet an anticipated revenue shortfall for the fourth quarter of 2003.  SafeNet was concerned that the failure to meet its revenue projections for that quarter would have an adverse effect on its anticipated merger with an entity known as Rainbow Technologies.

If you find that SafeNet did not sustain any damage as a result of the fraud, you will find for L-3 on the claim of fraud.  If you find that SafeNet did sustain damage as a result of the fraud, you must next decide the actual monetary loss sustained.

The New York measure of damages in an action for fraud is indemnity for the actual pecuniary loss sustained as a direct result of the wrong (the "out-of-pocket" rule) and differs from the contract measure which accounts for lost profit (the "loss-of-bargain" rule).  Generally, the "out-of-pocket" rule measures pecuniary loss by the difference between the value of what the plaintiff parted with and the value of what the plaintiff received while the "loss-of-bargain" rule measures the plaintiff's damage by the difference between what the plaintiff received and what the plaintiff would have received had the fraud not occurred.

**\*      NY PJI 3:20 Intentional Torts—Fraud And Deceit; *Lama Holding Co. v Smith Barney Inc.*, 646 N.Y.S.2d 76 (1996); *Crigger v. Fahnestock & Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006).**

**DAMAGES - PUNITIVE***

In addition to awarding damages to compensate SafeNet for its injuries, you may, but you are not required to, award SafeNet punitive damages if you find that the act(s) of L-3 that caused the injury complained of were wanton and/or reckless or malicious.  Punitive damages may be awarded for conduct that represents a high degree of immorality and shows such wanton dishonesty as to imply a criminal indifference to civil obligations.  The purpose of punitive damages is not to compensate the plaintiff but to punish the defendant for wanton, reckless and/or malicious acts and thereby to discourage the defendant and other companies from acting in a similar way in the future.

An act is malicious when it is done deliberately with knowledge of the plaintiff's rights, and with the intent to interfere with those rights.  An act is wanton and reckless when it demonstrates conscious indifference and utter disregard of its effect upon the health, safety and rights of others.  If you find that L-3's act(s) were not wanton and reckless or malicious, you need proceed no further in your deliberations on this issue.  On the other hand, if you find that L-3's act(s) were wanton and reckless or malicious, you may award SafeNet punitive damages.

[If the jury determines that defendant's acts were wanton and reckless, or malicious, the court should proceed to charge the jury on the factors it should consider in determining the amount of punitive damages.]

In arriving at your decision as to the amount of punitive damages you should consider the nature and reprehensibility of what L-3 did.  That would include the character of the wrongdoing, ([state the factors that are applicable, such as:] whether L-3's conduct demonstrated an indifference to, or a reckless disregard of, the health, safety or rights of others, whether the act(s) were done with an improper motive or vindictiveness, whether the act or acts constituted outrageous or oppressive intentional misconduct, how long the conduct went on, L-3's awareness

of what harm the conduct caused or was likely to cause, any concealment or covering up of the wrongdoing, how often L-3 had committed similar acts of this type in the past and the actual and potential harm created by L-3's conduct [add where appropriate:] (including the harm to individuals or entities other than SafeNet.  However, although you may consider the harm to individuals or entities other than SafeNet in determining the extent to which L-3's conduct was reprehensible, you may not add a specific amount to your punitive damages award to punish L-3 for the harm L-3 caused to others.).

The amount of punitive damages that you award must be both reasonable and proportionate to the actual and potential harm suffered by SafeNet, and to the compensatory damages you awarded SafeNet.  The reprehensibility of L-3's conduct is an important factor in deciding the amount of punitive damages that would be reasonable and proportionate in view of the harm suffered by SafeNet and the compensatory damages you have awarded SafeNet.

You may also consider L-3's financial condition and the impact your punitive damages award will have on L-3.

In reporting your verdict, you will state the amount awarded by you as punitive damages.

\*       **NY PJI 2:278 Damages—Punitive.**

**MISREPRESENTATION—SPECIAL RELATIONSHIP\***

Under New York law, a plaintiff may state a claim for negligent misrepresentation only if the defendant is under a duty to the plaintiff to exercise reasonable care in giving the information, and plaintiff's reliance on the information is foreseeable.   Such a special relationship is ordinarily not found to exist between sophisticated commercial entities entering into arm's length business transactions.   Whether a special relationship exists is determined by weighing:

> whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.

Therefore, before you proceed any further, you must determine whether a special relationship existed between SafeNet and L-3 such that SafeNet can pursue its negligent misrepresentation claim.   If you find that there was no such relationship, then you must find against SafeNet on its negligent misrepresentation claim.   If you find that there was such a relationship, you must then determine whether SafeNet has satisfied its remaining burden of proof, which is explained in the next instruction.

---

\*       **Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168 (2d Cir. 2004); Kimmel v. Schaefer, 89 N.Y.2d 257 (N.Y. 1996).**

**MISREPRESENTATION—ELEMENTS***

SafeNet's claim for negligent misrepresentation against L-3 has the following elements, each of which SafeNet must prove by a preponderance of the evidence:

One:  that L-3 represented to SafeNet that there was no NetHawk Technology in the Gigabit Products;

Two:  that the representation was false and that L-3 was negligent in not knowing that it was false;

Three: that SafeNet relied on the representation and was deceived by it;

Four:  that SafeNet acted with ordinary prudence in relying on the representation;

Five:  that a special relationship exists between SafeNet and L-3 (I will explain what this means in a separate instruction); and

Six:  that the false representation was the proximate cause of injury to SafeNet.

If you find that SafeNet has established each of these elements by a preponderance of the evidence, then you should return a verdict for SafeNet.  If on the other hand you find that SafeNet has failed to establish any one or more of these six elements, then you  must find for L-3.

**\*       Federal Jury Practice and Instructions (Fifth) § 123.02.**

44

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP
Timothy D. Katsiff*
1701 Market Street
Philadelphia, PA 19103
Tel.:  (215) 963-4857
*Of Counsel

and

BLANK ROME LLP
Kenneth L. Bressler (KB-3389)
Jeremy L. Reiss (JR-2731)
Blank Rome LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Tel.:  (212) 885-5000

Attorneys for Defendant,
L-3 Communications Corp.

Dated:  April 20, 2009